UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

HAINAN CRUISE ENTERPRISE SA,

    Plaintiff,

vs.

HAPPY CRUISES S.A., QUAIL TRAVEL
GROUP, S.A., AND QUAIL CRUISES
SHIPMANAGEMENT, LTD.,

    Defendants.

_____/

## ORIGINAL VERIFIED COMPLAINT

Plaintiff, Hainan Cruise Enterprise S.A. ("Hainan"), by and through undersigned counsel, respectfully submits its Original Verified Complaint against the Defendants, Happy Cruises S.A. ("Happy Cruises"), Quail Travel Group S.A. ("Quail Travel"), and Quail Cruises Shipmanagement, Ltd. ("Quail Cruises"), and would show as follows:

1. Jurisdiction is proper pursuant to 28 U.S.C. § 1333, Rule 9(h) and Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. This action is brought pursuant to 9 U.S.C. § 8 for the purpose of obtaining security for a foreign arbitration.

2. Venue is proper in this Court because property belonging to the Defendants and in the hands of garnishees Agencia de Viagens CVC Tur Limitada ("CVC"), Seahawk North America, **LLC** ("Seahawk"), Valter Patriani, and Rodolfo Spinelli (all collectively, "Settlement Debtors"), is presently located or will during the pendency of this suit be located within the Southern District of Florida.

**Parties**

3. Plaintiff Hainan is a foreign entity organized and existing pursuant to the laws of the Marshall Islands.

4. Defendant Happy Cruises was and is a company organized and operating under the laws of the Republic of Panama.

5. Defendant Quail Travel was and is a company organized and operating under the laws of Spain.

6. Defendant Quail Cruises was and is a company organized and operating under the laws of the Bahamas.   Quail Cruises is presently the Plaintiff in the matter entitled Quail Cruises Ship Management Ltd. v. Agencia De Viagens CVC Tur Limitada, et al., Civil Action No. 09-23248, Southern District of Florida (the "PACIFIC Litigation").

7. Made garnishees herein are CVC, Seahawk, Valter Patriani, and Rodolfo Spinelli, defendants in the PACIFIC LITIGATION.

**Happy Cruises Charter of the M/V HAPPY DOLPHIN (ex HAINAN EXPRESS)**

8. On or about March 3, 2011, Happy Cruises entered into a Charter Agreement whereby Happy Cruises agreed to charter the M/V HAINAN EXPRESS from her owners, Hainan, for seasonal charters beginning on October 31, 2011, and ending on December 8, 2014. *See* Charter Agreement, attached hereto as Exhibit A.   The Charter Agreement provided that Happy Cruises would operate the vessel under the name M/V HAPPY DOLPHIN as a passenger cruise ship operating in European waters.

9. In exchange for the use of the HAPPY DOLPHIN, the Charter Agreement obligated Happy Cruises to pay to Hainan daily charter hire according to the following schedule:

Season 1:  May 30, 2011 – October 31, 2011: $24,500/day;

    Season 2: February 19, 2012 – December 9, 2012: $25,500/day;

    Season 3: February 17, 2013 – December 9, 2013: $26,500/day;

    Season 4: February 16, 2014 – December 8, 2014: $27,500/day.

10. In addition to charter hire as outlined above, the Charter Agreement obligated Happy Cruises to pay for services and items provided to the HAPPY DOLPHIN including:

a) all expenses relating to passengers ashore including consular charges, duties, foreign general, municipal and state taxes applicable to passengers;

b) all costs associated with porters, stevedores, port tonnage charges, light dues, navigational dues, pilotage charges, tolls, dock and canal dues, mooring dues, tugs, pilots, line handliers; anchorage dues, port security, ship's clearances in and out and port agent's fees and charges, excluding the fees and cost of stevedores or porters that are used specifically for the handling of deck and engine supplies;

c) the removal of garbage from hotel and catering operations;

d) all costs associated with the hotel, catering and concessionaire crew, benefits according to the crew ITF agreements, uniforms for hotel and catering crew only, transportation to and from the Vessel, taxes, victualing and all insurances not specifically provided in the Charter;

e) all consumables related to hotel and catering, including additional fresh water and drinking water;

f) all fuel and the costs of supplying same, including fuel for tenders;

g) passenger meals and beverages;

h) passenger entertainment, video and music tapes;

    i)    all taxes and fees relating to the embarkation, transit or disembarkation of all passengers;

    j)    P & I and Charterers' liability insurance; and

    k)    doctor(s) and nurse(s) for the vessel.

11.    The Charter Agreement was and is governed by English Law (Clause 62). Further, Clause 63 of the Charter Agreement requires Hainan and Happy Cruises to submit any disputes arising out of the charter of the HAPPY DOLPHIN to arbitration before the London Maritime Arbitrators Association.

12.    On May 29, 2011, Hainan delivered the HAPPY DOLPHIN to Happy Cruises in Piraeus, Greece, in accordance with the Charter Agreement.

13.    On September 26, 2011, Happy Cruises breached the Charter Agreement without cause by cancelling the final five (5) weeks of the vessel's 2011 season and repudiating its performance for the remaining seasons. On September 29, 2011, Happy Cruises advised that it would be unable to pay numerous port and other expenses (including wages of the hotel staff employed by Happy Cruises).

14.    In further breach of the Charter Agreement, Happy Cruises also abandoned the HAPPY DOLPHIN and her crew in Venice, Italy, where the vessel had called under the charter.

15.    Prior to and following its breach of the Charter Agreement, Happy Cruises failed, in further breach of Clause 23 of the Charter Agreement, to pay certain creditors, including but not limited to hotel staff, bunker suppliers, and vessel agents, all of whom supplied goods and services to the HAPPY DOLPHIN on Happy Cruises' account.

16.    On or about September 25, 2011, as a result of Happy Cruises' failure to pay its creditors for the charges for Happy Cruises' account under the Charter Agreement, various

creditors of Happy Cruises arrested the HAPPY DOLPHIN at Venice, Italy to assert claims against the vessel. After fifty-six days, during which time Hainan secured numerous of the third party claims and settled other ones, the arrests were lifted and the vessel sailed from Venice. The arrests of the HAPPY DOLPHIN in Italy for sums owed by Happy Cruises to third parties, and Happy Cruises' failure to procure the release of the HAPPY DOLPHIN from arrest, placed Happy Cruises in further breach of Clause 51 of the Charter, which entitles Hainan to be indemnified in respect of the above costs and expenses which they have incurred.

17.     Following the HAPPY DOLPHIN's release from arrest in Italy she sailed to Greece, where she was again arrested by creditors asserting claims against the vessel that were properly for Happy Cruises' account under the Charter Agreement. Hainan incurred additional costs and expenses in an amount to be proven at trial of this matter maintaining and defending the vessel in Greece. Hainan secured numerous of the third party claims and settled other ones – as a result of which the arrests were lifted and the vessel sailed from Greece – commencing employment in mitigation of Hainan's losses on June 1, 2012 (given that the Charter Agreement with Happy Cruises was brought to an end by Hainan's acceptance of their repudiation and renunciation, without prejudice to their right to claim damages from them).

18.     In addition to the costs and expenses associated with maintaining and defending the HAPPY DOLPHIN during her arrests in Italy and Greece, Hainan has been forced to pay various creditors of Happy Cruises in order to procure the release of the vessel from arrest and/or to prevent additional costly judicial seizures of the vessel. These creditors include, *inter alia*, local agents (who claimed balances outstanding from Happy Cruises) and Happy Cruises' 241 hotel staff (whose employment contracts notably confirm that they were employed by Quail Cruises on behalf of Quail Travel as the owner and/or charterer of the HAPPY DOLPHIN). The wages of

the hotel staff were in arrears at the time of Happy Cruises' abandonment of the vessel. In addition, by abandoning the crew on board the vessel, Happy Cruises failed to repatriate them as they were obliged to do. To date, Hainan has paid: (1) €584,149.18 and $400,000.00 to the hotel crew in respect of their wages in arrears; (2) €187,801.00 to repatriate the hotel crew; and (3) €340,451.40 to various agents and suppliers in respect of sums outstanding from Happy Cruises. These payments to third party creditors of Happy Cruises, which resolved the claims of those creditors and ensured the release from arrest of the HAPPY DOLPHIN and/or prevented her further arrest total €1,110,401.58 and $400,000.00. In addition, Hainan has provided €1,507,289.62 in security to other creditors (bunker suppliers and suppliers/agents) to prevent further proceedings against the vessel. In doing so, Hainan incurred a bond fee of $5,763.69. Finally, Hainan is exposed to a potential claims by a crew member (who disembarked the HAPPY DOLPHIN during the 2011 summer season due to personal reasons) for an additional €5,553.00. During the period of the arrests in Italy and Greece, Hainan paid the total sums of €1,722,619.99 and $1,604,026.91 in respect of port captains' fees, the attendance on board the vessel of the general counsel of Enterprises Shipping & Trading S.A. (the HAPPY DOLPHIN's managers) at Italy to seek the vessel's release from arrest, the vessel's operating expenses, and berthing/port expenses. The above listed payments and/or claims brought against Hainan constitute losses sustained by Hainan as a result of Happy Cruises' breach of the Charter Agreement in respect of which Hainan are entitled to be indemnified by Happy Cruises in accordance with Clauses 46 and 51 of the Charter Agreement.

19.     The running expenses/attendance during the period of the vessel's arrests are also losses in respect of which Hainan are entitled to be indemnified by Happy Cruises in accordance with Clauses 46 and 51 of the Charter Agreement. In the alternative, Hainan is subrogated to the

rights of the aforementioned creditors and is entitled to recover from Happy Cruises all payments made to the said creditors to satisfy charges against the HAPPY DOLPHIN. In addition to the foregoing losses, Happy Cruises owe Hainan (1) the sum of €319,869.84 in respect of various expense for their account under the Charter Agreement and in respect of the value of bunkers on board the HAPPY DOLPHIN at the time of her delivery, (2) the sum of €374,717.50 by way of hire outstanding until 18 October 2011 (the date on which Hainan accepted Happy Cruises' repudiatory and renunciatory breaches of the Charter Agreement as wrongfully bringing the charter to an end), (3) €280,998.08 in respect of bunkers consumed during the period of the arrests in Italy and en route to Greece, and (4) €13,317,463.71 in respect of the early redelivery of the HAPPY DOLPHIN.

20.     As evidenced above, Hainan's total damages to date resulting from Happy Cruises breach of the Charter Agreement are in the principal amount of €18,138,912.53 and $2,009.790.50, exclusive of interest, costs, and attorneys' fees.

## ALTER EGO ALLEGATIONS

21.     Happy Cruises and Quail Cruises are Panamanian and Bahamian shell corporations, respectively, that exist or existed solely as "paper entities" through which their 100% corporate parent Quail Travel chartered vessels for its own ultimate benefit.  Quail Travel and its principals so dominated and controlled Happy Cruises and Quail Cruises as to render the two subsidiaries mere alter egos of the parent.  Therefore, the assets of any one should be held liable to satisfy the debts of any other.  Specifically, any debt(s) due to, judgment(s) in favor of, or settlement funds within the district intended for Quail Cruises and/or Quail Travel are subject to garnishment to satisfy Hainan's claim against Happy Cruises.

22.     Happy Cruises and Quail Travel maintain grossly inadequate capitalization.

23.     Throughout its period of operation Happy Cruises maintained capitalization of only $10,000, making it severely undercapitalized for an entity engaged in the operation of one or more cruise ships with charter rates exceeding $24,000 per day each.   On information and belief, Happy Cruises was able to operate with this severe undercapitalization only by receiving constant infusions of operating cash from Quail Travel and/or Quail Cruises.

24.     Despite annual income in excess of $30 Million, Quail Travel maintains a total capitalization of only €60,000.

25.     Happy Cruises' entry into the cruise market as the *de facto* continuation of Quail Cruises following Quail Cruises' failed attempt to establish a cruise line onboard the PACIFIC is a matter of public record within the cruise ship industry. *See* Spanish Operator Happy Cruises Closes Down on Liquidity Woes, printed in *Cruise Business Review*, attached as Exhibit ____. As Happy Cruises was incorporated in order to give Quail Cruises and/or Quail Travel an alternate means of chartering vessels without alerting creditors to Quail Cruises' failed venture, Hainan alleges that Happy Cruises was organized or used for fraudulent, illegal, or improper purposes.

26.     The Officers and Directors identified in Happy Cruises' Certificate of Registration with the Republic of Panama - Isolda Moran Anria (Chairwoman), Lilian De Muschett (Treasurer), and Carlos Bryden (Secretary) – are "Officers For Hire" that do not possess any actual interest or authority in Happy Cruises and are named for the sole purpose of establishing Happy Cruises' legal presence in Panama.  *See* Certificate of Incorporation, attached as Exhibit C.  As evidence of this, Ms. Anria is also named as a director not only for Happy Cruises, but for more than 1,100 other Panamanian corporations.  *See* Corporate Associations of Isolda Moran Anria, attached as Exhibit D. Similarly, in addition to Happy Cruises, Mr. Bryden is ostensibly a "Subscriber" for more than 1,300 Panamanian corporations.  *See* Corporate Associations of

Carlos Bryden, attached as Exhibit E.  Accordingly, because Happy Cruises was formed with Directors whose lack of actual authority contradicts their stated authority on Happy Cruises' Certificate of Registration, Hainan alleges that Happy Cruises was organized or used for fraudulent, illegal, or improper purposes.

27. On information and belief, Happy Cruises' incorporation was caused by Quail Travel and/or Quail Cruises in 2009.  Happy Cruises was incorporated in order to assume Quail Cruises' position as Quail Travel's chartering branch when Quail Cruises' failed venture to operate the M/V PACIFIC as a cruise ship resulted in the PACIFIC Litigation.

28. Happy Cruises does not maintain an office or any actual presence in Panama beyond its paper existence there, and uses as its registered office address the address of a Panamanian law firm, Icaza, Gonzalez-Ruiz & Aleman, Calle Aquilino de la Guardia Street No. 8, Panama, republic of Panama.  *See* Contact Details for Icaza, Gonzalez-Ruiz & Aleman, attached as Exhibit F.  Happy Cruises' official statements that it is domiciled in Panama are therefore fictitious and are meant only to conceal its identity as an alter ego of Quail Travel and Quail Cruises.  Indeed, despite ostensibly being located in Panama, Happy Cruises sometimes uses Quail Travel's corporate address at Calle Caleruega, 79 – PLT 2, Madrid, Spain, as its own address.

29. Happy Cruises' failure to maintain any actual existence in the country of its incorporation is further demonstrated by the Charter Agreement made subject of this Complaint, wherein Happy Cruises provided Quail Travel's telephone number in Madrid, Spain, as Happy Cruises' own contact number.  *See* Charter Agreement, ¶ 60(b).

30. Happy Cruises, Quail Travel, and Quail Cruises regularly commingle funds and assets for the benefit of and to conceal the intentional insolvency of Happy Cruises and Quail

Cruises.  Under the Charter Agreement made subject of this suit, Happy Cruises (as Charterer) was required to make monthly charter hire payments to Hainan for use of the HAPPY DOLPHIN. Each of the four such payments that were made before Happy Cruises breached the Charter Agreement were made from the operating account of Quail Travel (not Happy Cruises).  *See* Wire Transfer Records for HAPPY DOLPHIN Hire Payments, attached as Exhibit G.  These payments totaling $3,586,997.00 reflect an improper use of Quail Travel's property and assets to satisfy debts owed by its subsidiary and alter ego, Happy Cruises.  Similarly, on information and belief, hire payments for vessels chartered by Quail Cruises are routinely made by Quail Travel.  These allegations further support that Happy Cruises and/or Quail Cruises were organized or used for fraudulent, illegal, or improper purposes.

31.     During the period of its operation, Happy Cruises website and email service were paid for by Quail Travel.

32.     All of Happy Cruises obligations under the Charter Agreement were performed by Quail Travel and/or Quail Cruises.  Specifically, Quail Travel assumed the role of marketing and selling cruise packages to prospective passengers, while Quail Cruises operated the "hotel side" of the HAPPY DOLPHIN.  This assignment of roles occurred because Happy Cruises has no operational capacity independent from that of Quail Travel and Quail Cruises.  Indeed, the employment contracts of the hotel staff employed onboard the HAPPY DOLPHIN demonstrate that: (1) Quail Cruises' and Happy Cruises' names were used interchangeably as the "company" responsible for crewing the HAPPY DOLPHIN; and (2) both Quail Cruises and Happy Cruises represented themselves to be agents of Quail Travel and represented that Quail Travel (rather than Happy Cruises) was the "owner and/or charterer" of the HAPPY DOLPHIN. *See* Employment Contracts for HAPPY DOLPHIN, attached as Exhibit H *in globo*.

33. The dominant principals of Happy Cruises are Alfonso Lopez Perez (Director and Attorney in Fact) and Miguel Mounir (Director).

34. Mr. Mounir, the Director of Happy Cruises who executed the Charter Agreement on behalf of Happy Cruises and was designated as the "contact person" in that Agreement, is an Officer of Quail Cruises. During the fixture negotiations relating to the HAPPY DOLPHIN, Mr. Mounir was at one point designated as the "contact person" for Happy Cruises via his Quail Travel email address.

35. Mr. Lopez Perez, the Director of Happy Cruises who visited the HAPPY DOLPHIN for the purpose of inspecting it prior to Happy Cruises' entry into the Charter Agreement, is a Director and Shareholder of Quail Travel.

36. Happy Cruises, Quail Cruises and Quail Travel routinely act as agents for one another in order to carry out the business operations of the principal and to conceal the subsidiaries' lack of independent capacity. As an example, to induce Hainan into agreeing to charter the HAPPY DOLPHIN to Happy Cruises, Mr. Mounir averred that Happy Cruises was already the charterer of the M/V GEMINI. *See* GEMINI Employment Contract, attached as Exhibit I. According to pleadings filed in *Saagen Developments And Trading Ltd. v. Quail Cruises Ship Management a/k/a Happy Cruises, S.A., et al*., Civ. Action No. 22-23873 (S.D.Fl.), Quail Cruises represented itself to be an agent of Happy Cruises in dealings with bunker suppliers in order to induce suppliers to deliver necessaries to the GEMINI while it was on charter to Happy Cruises. *See* Verified Complaint, Rec. Doc. 1, Civ. Action No. 22-23873. At the same time, Quail Cruises represented in contracts with hotel staff employed to work onboard the HAPPY DOLPHIN and the GEMINI that it was the agent of Quail Travel and that Quail Travel was the "Owner and/or Charterer" of the HAPPY DOLPHIN and the GEMINI. *See* Exhibits H, I.

Notably, in the case of the GEMINI, Quail Cruises made this representation while writing on Happy Cruises' stationary, further demonstrating the entities' failure to adhere to corporate formalities. By holding both Happy Cruises and Quail Travel out to be the charterers of the HAPPY DOLPHIN and the GEMINI while acting as agent on behalf of both companies, Quail Cruises disregarded the alleged separate incorporation of the three entities. Finally, the drafts of the bank guarantee which Happy Cruises were obligated to provide stated that they were being provided on behalf of Quail Travel as the charterer of the HAPPY DOLPHIN.

37. Quail Cruises and Quail Travel treat the assets of one as *de facto* assets of the other in disregard of the allegedly separate existence of the two corporations. Despite bringing suit in its own name against the Defendants in the PACIFIC Litigation, Quail Cruises has admitted that any settlement negotiated in that action would require the approval of Spanish authorities charged with administering Quail Travel's assets. *See* Joint Motion to Stay Litigation, Civ. Action No. 09-23248 (S.D.Fl.), Rec. Doc. 294. In addition, the proposed settlement agreement (which, on information and belief, has been accepted by the parties pending approval by aforementioned Spanish authorities) is drafted so as to be executed by Quail Travel despite Quail Travel being a non-party to the PACIFIC Litigation being settled. The settlement agreement further states that the debt evidenced therein will be paid to the "Quail Group," including both Quail Travel and Quail Cruises. Quail Cruises' inclusion of financial benefits for Quail Travel in the agreement to settle claims that are Quail Cruises' exclusively further demonstrates a disregard of the corporations' allegedly separate existence. Moreover, in the PACIFIC litigation, Quail Cruises' Disclosure Statement boldly lists Quail Travel and its officers/shareholders as "interested parties." *See* Certificate of Interested Parties, Civ. Action No. 09-23248 (S.D.Fl.), Rec. Doc. 192.

38. On the basis of the foregoing allegations, Happy Cruises, Quail Cruises, and/or Quail Travel are indebted to Hainan in the principal amount of EIGHTEEN MILLION ONE HUNDRED THIRTY EIGHT THOUSAND NINE HUNDRED AND TWELVE and 53/100 EUROS (€18,138,912.53) plus TWO MILLION NINE THOUSAND SEVEN HUNDRED NINETY AND 50/100 DOLLARS ($2,009,790.50), interest, costs, and attorney's fees.

39. Alternatively, on the basis of the foregoing facts, Quail Cruises and Quail Travel are the corporate alter ego of Happy Cruises, and are owed a debt of $5.0 Million from the Settlement Debtors. Because the Settlement Debtors are present within the jurisdiction of this Honorable Court, said debt is deemed within the jurisdiction of this Court and is subject to garnishment to settle and serve as security for the debt owed by Happy Cruises to Hainan.

## RULE B ALLEGATIONS

40. By this reference, Hainan incorporates all previous allegations as Rule B Allegations as if set forth here *in extenso*.

41. On the basis of the foregoing allegations, Happy Cruises, Quail Cruises, and/or Quail Travel are indebted to Hainan in the principal amount of EIGHTEEN MILLION ONE HUNDRED THIRTY EIGHT THOUSAND NINE HUNDRED AND TWELVE and 53/100 EUROS (€18,138,912.53) plus TWO MILLION NINE THOUSAND SEVEN HUNDRED NINETY AND 50/100 DOLLARS ($2,009,790.50), interest, costs, and attorney's fees.

42. Upon information and belief, neither Happy Cruises, nor Quail Cruises, nor Quail Travel can be found within the district or within the jurisdiction of this Court within the meaning of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims. However, Happy Cruises, Quail Cruises and Quail Travel own and/or possess an attachable interest in property presently within the jurisdiction of the Court, namely the debt due from the Settlement

Debtors and/or any future judgment in favor of Quail Cruises in Civil Action No. 09-23248 (S.D.Fl.).  This property may be attached pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure and used to satisfy Hainan's claim herein.

WHEREFORE, Plaintiff Hainan prays:

1. That this Verified Complaint be deemed good and sufficient;

2. That process in due forum of law according to the practice of this Court in cases of admiralty jurisdiction issue against Happy Cruises, Quail Cruises, and Quail Travel citing them to appear and answer under oath all and singular the matters alleged in this Original Verified Complaint, failing which default judgment be entered against Happy Cruises, Quail Cruises, and Quail Travel in the amount of €18,138,912.53 plus $2,009,790.50, interest, costs and attorney's fees;

3. That because the Defendants cannot be found within this District and have no duly appointed agent(s) for service of process in this District, the Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching the debt due from the Settlement Debtors and/or any future judgment in favor of Quail Cruises in Civil Action No. 09-23248 (S.D.Fl.)., and all other goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other belonging to, due or being transferred to, from, or for the benefit of Happy Cruises, Quail Cruises, and/or Quail Travel, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

4.      That pursuant to 9 U.S.C. §§201 et seq. this Court recognize and confirm any arbitration award or judgment in Plaintiff's favor against Happy Cruises as a judgment of this Court enforceable against Happy Cruises, Quail Cruises, Quail Travel and/or any other alter ego of Happy Cruises;

5.      That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

6.      That the Plaintiff have such other, further relief as the Court deems just, proper and equitable.

Dated this 6th day of November, 2012.

HORR, NOVAK & SKIPP, P.A.
Attorneys for Plaintiff
Two Datran Center, Suite 1700
9130 S. Dadeland Boulevard
Miami, FL 33156
Telephone: (305) 670-2525
Telefax:   (305) 670-2526


     /s/ Patrick E. Novak
PATRICK E. NOVAK
Florida Bar No.: 838764
patrickn@admiral-law.com

-and-

Daniel A. Tadros, LA Bar No. #21906
Alan R. Davis, LA Bar No. #31694
CHAFFE McCALL L.L.P.
2300 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile:  (504) 585-7075
**Attorneys for Hainan Cruise Enterprise S.A.**